We move to the next case this afternoon which is Bergal v. Roth. Ms. Craig, you may proceed. Thank you, Your Honor. May it please the Court, my name is Megan Craig and I represent the appellant plaintiff Linda Bergal. Ms. Bergal is seeking a reversal of a trial rule 12C dismissal of her entire complaint against her former attorney and former accountant based upon collateral estoppel. The application of collateral estoppel requires an analysis of whether the party whom the former adjudication has asserted had a full and fair opportunity to litigate the issue and whether it would be unfair under the circumstances to permit issue preclusion in the current action. The dismissal by the district court in this case included broad language that encompassed all counts of Ms. Bergal's complaint including count six which is where she alleges accounting malpractice against Mr. Sanders despite no motion before the court to dismiss count six against Mr. Sanders. The district court also found issues in this case were resolved by issues in an Indiana case in which the ownership of certain financial accounts were at issue but where neither defendant was a party. The Indiana determination of Ms. Craig, was Mrs. Bergal injured in any way other than by the alleged malpractice other than by the loss of the Vanguard transfer on death account? Yes. In fact, she was damaged in multiple ways. First she was damaged when they told her that she needed to resign her position as trustee of the sub trust that was created for her benefit. As a result of that, she's been forced to pay for trust assets out of her own money rather than using trust funds to pay for things such as real estate taxes and other issues that would come up with regard to the real estate. In addition, they're subsequent to the filing and briefing of this case, it has been finally determined that there was no oral agreement that occurred with Mr. Roth with Mr. Ross guidance that oral agreement that was originally in the judgment from the Indiana State Court resulted in $3.4 million being frozen by the court and unavailable to Mrs. Bergal for the last four years, of which meant that she could no longer continue to pay bills as she had. That's in addition to interest that is accruing on the Vanguard brokerage account, there are two Vanguard accounts to be clear, there's a brokerage account and an IRA account. The brokerage account is the one that's more fully discussed in the briefs of the death account that was the subject of the Indiana Court of Appeals decision that, as I recall, you didn't mention in your briefs. I don't recall that we didn't mention it, we did talk about the Vanguard TOD account. I've got to tell you, I am stunned you did not talk about the Indiana Court of Appeals decision in your brief, which I found stunning. Well I think that at that time we didn't have the opinion available. If you're talking about the briefing that we did before the district court, all of this was- I'm talking about the briefing to this court, and I believe the Indiana Supreme Court is now denied transfer in that case, is that right? Yes, Your Honor. We discussed the Indiana litigation, and in our brief, we discussed the amended judgment, which is what is being followed by the Indiana Court of Appeals. And so the Court of Appeals decision, which upheld most of the second amended judgment, is what we focused on in our brief, rather than the appellate decision. I guess I've looked at the case a little more narrowly than you are now arguing, but I too have wondered how Mrs. Burkle was harmed by the advice. The Indiana Court of Appeals seems to have made clear that David will not be allowed a double recovery of the Vanguard account, and because he already received that account as second beneficiary, how could she possibly still be liable for the amount of the Vanguard account? Well, that is yet to be determined as a part of the Indiana State case. There are questions of prejudgment interest that will also be accruing. The funds that are at issue, when you're talking about the Vanguard TOD account, those funds were given to David Burkle directly, rather than to the trust and to his sub-trustee. The reason that that distinction is important is because the sub-trustee has limiting language on it, requiring that the funds only be used for his health, maintenance, and support. It is not in the same way that the funds ended up being used, which is as attorney fees, to sue Mrs. Burkle in the Indiana case. Does she have standing to complain about that? As beneficiary of that trust? She is not the beneficiary, but she is the person who is going to have these prejudgment interest held against her for the money that she would have no way to turn over, because the money was, by virtue of her own attorney's actions, turned over to the opposing party. So wait a minute, you're saying David is going to complain, the trust is going to complain it's entitled to prejudgment interest because its beneficiary got the money? They are, yes. That is exactly what the judgment says. That sounds crazy. That is not in the realm of proper judgment. I will tell you, I agree with you 100% that that is crazy to use your word, but that is how the judgment is written. And at this point in time, in the Indiana case, they are suggesting this. Is there any suggestion by the trial judge that she was going to interpret it that way? Do you think so, as to say that the trust is entitled to prejudgment interest for money that was in the hands of the beneficiary? The way that the second amended judgment is written, it talks about... Has the trial judge reached that unlikely conclusion? Let me put it that way. We have not had that hearing in front of the trial court judge. There are several motions pending in front of the trial court judge, but she did allow that account to be held against Mrs. Burkle. So let me make sure I've got... I mean, I frankly had understood this to be mainly about the Vanguard TOD account. So, and you're telling us there are other ways in which she was hurt? It was articulated in the district court? It was articulated in the district court. It was in the response to the motion. It's in the complaint. It's also found in the district court's original order dismissing the case, where he discusses the fact that she was forced to resign as a successor trustee. We make an allegation. How did that hurt her? She is no longer in control of the funds for her own benefit. So the subtrust A, where she would have been the co-trustee, she cannot control any of those funds and now is forced to pay for things for the trust assets out of her own pocket. As I mentioned, dues with regard to real property that is held by the trust, real estate taxes, all of that is being paid by Mrs. Burkle individually, not by the trust. Was she not left anything by him? Well, that was the question is what it was. We argued unsuccessfully that she was left many accounts by him. What the Court of Appeals came back and decided was that she was left one account with the Vanguard IRA account, which is separate from the Vanguard TOD account, and that the remaining IRAs were to go into a subtrust for her benefit during her lifetime. How much does all that amount to? The Vanguard account currently is approximately $3.4 million. And the IRA account is or was approximately $1.8 million. I'm not exactly sure because she's not in control of that account currently. She will be or is in control of $3.4 million. Right now, the trial court judge in the Indiana case has frozen that account and they are suggesting they're going to take that to recover approximately $2 million in attorneys fees. $2 million in attorneys fees? And I'd like to reserve the balance of my time for rebuttal. Thank you. Thank you. Ms. Gurney. Yes, may it please the Court. I represent Appellee Joseph Sanders. And to start off, given the things that have been allegations raised against Mr. Sanders and Mr. Roth, I think it's important to make their roles in this matter clear. Attorney Ben Roth drafted Dr. Milton Bergel's estate planning documents, including the trust, and certified public accountant Joseph Sanders served as co-trustee and then sole trustee of the portion of the trust that benefits Mrs. Bergel. Both men obviously had a duty to make sure that Dr. Bergel's intentions for the distribution of his assets after death were carried out. And that is why they urged Linda Bergel to disclaim her interest in the Vanguard TOD account. It's also important to note, and I think the Court has recognized, that after Dr. Bergel's death, his son, David, became the sole trustee and sole beneficiary of the portion of the trust that was intended to hold that Vanguard TOD account. So, no one else really has any claim to the ownership of that account other than David Bergel. Your Honors, I submit to you that the District Court was completely correct in holding that any and all of Linda Bergel's causes of action against Mr. Roth and Mr. Sanders are barred and precluded by the doctrine of collateral estoppel under Indiana law. The Indiana judgment resolves, given the facts and the issues resolved by the Indiana judgment, it is absolutely impossible for Mrs. Bergel to prove that any tortious conduct on the part of Mr. Roth or Mr. Sanders caused her to suffer any damage. But what do we do about these additional damages she's talking about today in terms of having to resign as trustee and the IRA account having been frozen? Your Honor, some of this is all news to me and I'm sure counsel for Mr. Roth, but the Indiana jury and the Indiana judgment... It was not raised in the District Court? I have not heard this before. There's different ideations of the argument, but I think what is established is that all of these issues were resolved by the Indiana jury trial and the judgment. Mrs. Bergel had argued to the jury in Indiana that it was improper for Mr. Roth and Mr. Sanders. She alleged that they forced her or hoodwinked her, I guess, into resigning as co-trustee for her own trust, but the jury did not find that. And the jury specifically found that shortly after her husband's death, there was a meeting on December 5th where she met with Mr. Roth as the drafter of the trust documents and Mr. Sanders as co-trustee. And she told them that she acknowledged that she didn't rightfully possess some of the assets that were now in her name and that she resigned as co-trustee and she made an oral contract, according to the jury, to return a number of assets to the trust. And one of them was this Vanguard TOD account. So all of this has been resolved. Yeah, but I think I understand the issues with respect to the Vanguard TOD, but it seems to me like there's at least a reasonable argument that both Roth and Sanders, when they're meeting with David and with Linda, they were lawyer and accountant for Dr. Bergel. They've got competing claimants. They can't be a lawyer, at least can't be a lawyer, and we'll talk about that with Mr. Peoli, I guess, but can't be a lawyer to both, right? Well, it's certainly disputed that they were there to give legal advice to Ms. Bergel. Oh, yeah, but that's hard to resolve on a 12B6 or 12C motion, right? I thought the theory was no injury. Well, no, the theory is no causation because now, and in her briefs, Mrs. Bergel concedes that she has absolutely no lawful interest in the Vanguard TOD account. So as the district court found, there's no way to show that anything that Mr. Roth or Mr. Sanders did or said to her, which the jury did not find a problem with, caused her erroneously to give up her interest in the Vanguard TOD account. Ms. Kearney, is there any possibility that Mrs. Bergel will be subject to a double recovery? Absolutely not, Your Honor, and that was the portion of the Indiana Court of Appeals decision and the trial court's judgment that was not addressed to this court in the briefs by Mrs. Bergel. In fact, I'll quote you what the Indiana Court of Appeals said, that because effectively David Bergel was the only person and the only trustee for his portion of the trust where the Vanguard account belonged, and Mrs. Bergel has already disclaimed that account, and the money was paid to, has been paid to Mr. Bergel, David Bergel. The court said, quote, if she has already disclaimed this account, and if it is not, and if it is now owned by David Bergel, Mrs. Bergel need take no further action regarding this asset. Okay, so the accounting issue, restoring the Vanguard account to the trust, is not still on the table in state court. Is that what you're saying? Correct, it's already, it's in the judgment and it's in the Court of Appeals decision that the money, when it was disclaimed by Mrs. Bergel, the Vanguard account, the money was paid directly to David Bergel, the rightful owner, and all through, and you'll note that the, the main argument in Mrs. Bergel's opening brief is that she suffered damage because the money was not paid to the trust that David was the sole beneficiary of, it was actually just paid to him. And the Court of Appeals has said, no harm, no foul, he has the money. It has reiterated the judgment of the Indiana court that says all of this is going, all of what Mrs. Bergel owes to anybody is going to be determined at a hearing in the trial court, in the Indiana trial court, with a full accounting of what she owes. And both the trial court and the appellate court have said there is not going to be any possibility that she is going to have to pay anybody twice. David Bergel has the money from the Vanguard account and she does not have to repay it to him or repay it to anybody else. There's no more interest accruing on that because it's been paid to him. So as of the point it was paid to him, obviously there's no more interest accruing. There may be interest that he was entitled to while Mrs. Bergel held the money, but that's an issue for the Indiana trial court. And that's where all of this belonged and where all of this has been resolved. And just out of curiosity, there are $2 million in attorney's fees? Your Honor, I'm not involved in the Indiana case, so I don't know. Okay. Thank you. Thank you, Ms. Gurney. Thank you, Your Honor. Victor Pioli? May it please the court, counsel, good afternoon. My name is Victor Pioli and I represent the defendant appellees Ben Roth and his law firm, Roth, Roetzel & Andrews. Judge Rovner, I'll start with what you just concluded with. If you look at the Indiana court opinion on page 32 of 33 of that opinion, they explicitly state that there is no risk of duplicative or excessive recovery. The recovery under the judgment is explicit. Each subject account, regardless of how many theories of liability under which it must be returned to the trust, will and can be returned only once. And Linda is personally liable for making those accounts whole to the extent she depleted them in the amounts lower than the respective dates on which she diverted them. So there is no risk of double recovery in the Indiana case. Did you say in the amounts she depleted them? In other words, if she had taken money out during the pendency of the case, she would be responsible for that difference. But there's no double recovery in that instance. So there's no risk of double recovery. That theory is just, it's not going anywhere, frankly. With regard to the, I'll just jump right into it, because Judge Hamilton, I was as befuddled as you were by hearing these new claims, the damages. You know, we were presented with a case of malpractice against Ben Roth. I have to go according to what the pleadings are in this case. I'm not in the Indiana case. I don't know what's going on in the Indiana case. And now it's showing up on the day of oral argument and raising new theories and new damages that weren't part of the pleadings in the case is improper. You know, you have to take, this is a motion for judgment on the pleadings. We have to take the pleadings as they stood before the district court. And, you know, based on those pleadings, the district court's decision was absolutely correct. The only damages that's claimed in the complaint and before the district court in this case was the Vanguard, was the Vanguard TOD account. And that's $1.5 million. You'll see it throughout the complaint in this case. And based on that, the district court was absolutely correct in granting the motion for judgment on the pleadings. There's simply no way that she can recover any damages. And there's a lot of red herrings, frankly, when you go over the briefs. Maybe you'll tell me this is a red herring, but what do we make of the email that Mr. Roth, I think, sent to Mr. Sanders about both sides being fully funded, in essence, armed for the fight ahead in the Indiana courts? Judge, I can't, it's a motion for judgment on the pleadings and it is a red herring, you're right. I can't contest that. I have to assume everything that's alleged as far as the actual acts of negligence or malpractice are correct. I'm sure my client would want me to state on the record, we dispute them all. Even the fact that we represented Linda at all, but we have to assume that those are correct. And we do. This is a motion for judgment of the pleadings based on proximate cause and damages only. So ultimately, all these other allegations as to wrongdoing, those are red herrings. And, you know, there's so many allegations about the rules of professional conduct, ethical violations. You know, if you look at the preamble to the rules of professional conduct, they explicitly state that violations of the rule should not in itself give rise to a cause of action against a lawyer. And the reason for that is simple. You have to prove other things. And some of those other things are proximate cause and damages, which they simply cannot prove here. And you can't just prove any damages. You have to actually prove pecuniary loss in a legal malpractice case. It has to be a monetary loss. Mr. Kelly, your time has expired. Thank you for your time, Judge. Thank you. Ms. Craig. Ms. Craig, we can't hear you. My apologies. Can you hear me now? Yes. Thank you. To briefly touch on a couple of things. I would direct the court to page five of the district court's order where the judge talks about how the defendants duped her into resignation with reference to her trusteeship. This was not a new allegation. This is something that was contained in the complaint. It was also contained in the motions to the district court and even was found in the order. In addition, no one has touched on the fact that there is a claim for accounting malpractice that was not requested to be dismissed, that was dismissed, and that must be reversed. And with regard to what is being referred to as a red herring, that is where Mrs. Burgle's lawyer funded the party against her so that he would have $1.5 million with which to attack her in the Indiana case. That is not insignificant. What does he mean by he funded her? The email from Mr. Roth, the attorney, to Mr. Sanders said, we have secured the Vanguard account to David Burgle. Now everyone is funded to go to litigation. He's talking about David, isn't he? Yes. Well, that's not him, is it? I'm sorry, I don't know if I understand what you're asking. Well, you're saying that the lawyer funded him. The lawyer took all action. He was the one that put the paperwork together and sent the paperwork to David so that he would have the money individually and not within subtrust fee. Of which the other both Attorney Roth has said that that is not subject for attorney fees. So what ended up happening is that these funds were used because of Mr. Roth's actions. There are damages because of his actions. So you're saying he was damaged, sure, that she was damaged because from whatever source David was able to prevail in the Indiana judgment, right? She was damaged based on the actions that Mr. Roth took. There is testimony in the Indiana case where David... You're claiming, you're claiming, he's or she is claiming then she was entitled basically to win by default a case that she should have lost. She, no, what I am claiming is that Mr. Roth was her attorney. He had an obligation to look out for her and not throw her to the wolves. I understand that point. The question is about causation and damages, but your theory seems to be that she was entitled to win because David would not have been able to litigate and pursue the recovery of any of the other properties. I'm not sure that she was entitled to win in that regard. I think that it adds to her damages with regard to this litigation. Which would be measured how? By what she lost in the Indiana litigation? There is that because there is the Vanguard IRA that was a part of that. There is also the question because David has testified that that $1.5 million is what he used and has no other funding with which to have pursued her and pursuing someone at $1.5 million. Thank you. Thank you, Ms. Craig. Thanks to all counsel and the case is taken under advisement.